IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KEVIN LEO DONAHUE,<br><br>Plaintiff,<br>v.<br><br>OFFICER SHAUN WIHONGI, SALT LAKE CITY POLICE DEPARTMENT, and SALT LAKE CITY CORPORATION,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-00312<br><br>District Judge Dale A. Kimball |

This matter is before the court on Defendants Officer Shaun Wihongi, Salt Lake City Police Department, and Salt Lake City Corporation's (collectively "Defendants") Motion for Summary Judgment. On November 14, 2018, the court held a hearing on the motion. At the hearing, the Plaintiff was represented by Karra Porter and John Lauritzen. Defendants were represented by John Delaney. The court took the motion under advisement. Based on the briefing filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order GRANTING the Defendants' Motion for Summary Judgment in its entirety. (Dkt. No 26).

**FACTUAL BACKGROUND**

Plaintiff Kevin Leo Donahue M.D. filed this case arguing that Officer Shaun Wihongi used excessive force against him in violation of his 4th amendment rights. On April 21, 2015, at approximately 10:45 p.m., Donahue witnessed what he believed to be criminal behavior two houses west of his house. Donahue was returning home after working all day helping his

1

neighbor Cate on a home remodel. Prior to returning home he ate at a restaurant with Cate. Donahue had one glass of wine with Cate before leaving to his home.[1]

On his way home, he noticed an individual he did not recognize on his neighbor Ruth's front entry landing. Ruth is single and elderly. Donahue questioned the individual and she told him that she was there because she was looking for a place to rent. She told Donahue that her boyfriend lived there. Donahue knew she was lying by her response and told her to leave immediately. She resisted leaving and Donahue called her "a piece of shit" because he believed she was trespassing.

Donahue asserts that she responded by swinging her right arm and hit his left jaw. Donahue told her that he was calling the police. She responded that the police were just a few houses down and that she was hiding from them because there had been a disturbance at that house. Donahue walked down the street to speak with the police because he believed that she may be a threat.

Donahue walked up to Officer Bennett, who was on the sidewalk, and told him that he wanted to report an assault. Donahue whispered to Bennett "I don't want to get involved in this mess. My name is Kevin Donahue. I live at 1864. I, I don't want to get involved in this mess."[2] Bennett Body Cam Transcript; Dkt. No. 33, Ex. 8. Bennett repeatedly informed Officer Bennett that he did not want to get involved, but that he only wanted to inform him that he saw a woman trespassing down the street at his single elderly neighbor's house and the woman assaulted him. Officer Bennett informed Donahue that he was in training and that the other officers would be finished soon.

---

[1] Donahue is a medical doctor and he contends that his doctor recommends drinking one glass of wine a day for medical reasons. The fact that Donahue only had one glass of wine is not in dispute.
[2] It appears by the events that follow that Officer Bennett did not get Donahue's name after he whispered it.

Officer Wihongi exited the house and interviewed the women who hit Donahue. The women falsely identified herself as Amy. After speaking with the women for five to ten minutes, the police allowed her to leave. During this encounter Donahue was sitting down in front of a nearby house.

Donahue recounted his recollection of his alleged assault to Officer Wihongi. Donahue told Officer Wihongi that he was a long-time resident of the community and has extensive knowledge of the neighborhood and neighbors. Officer Wihongi requested Donahue's name, to which Donahue refused to give because he stated that he did nothing wrong, committed no crimes, and only wanted to report the assault, but not file a police report.

Officer Wihongi stated that Amy said that Donahue was intoxicated. Specifically, Amy said that Donahue was drunker than "Cooter Brown." Donahue told Officer Wihongi that he only had one glass of wine, and that he could verify that by speaking with his neighbor Cate who lived five houses west.

Officer Wihongi ordered Donahue multiple times to provide his name. Donahue replied that he only wanted to report the assault and did not want to file a police report or get involved. Officer Wihongi told Donahue to stand up because he was being detained. Donahue responded that he will give the officer his name and asked the officer multiple times to please not hurt him. Donahue asserts that while restraining him by holding his right arm behind his back and flexing his wrist, Officer Wihongi abruptly hyper flexed his wrist. Then both he and Officer Bennett allegedly performed a search and pat-down on Donahue.

While in handcuffs, Donahue told the officers that he had served the Veteran's at the VAMC for four years, worked for the Native Americans for four years as a physician, worked as a physician at Weber State University for four years, and was an active community member for

the last 25 years. At this time Donahue requested that Officer Wihongi bring in a supervisor. By this time Officer Wihongi allegedly discovered that the women who identified herself as "Amy" was long gone and had provided a fake name. Sergeant Wallace allegedly arrived ten minutes later and removed the handcuffs after listening to Donahue's recollection of the proceeding events.

Donahue told the officers that "This will not go." The next day Salt Lake City Police Department allegedly refused to photograph the bruises on Donahue's arm while at LDS hospital. Donahue photographed the bruises himself with an attorney as a witness. Donahue filed this suit claiming that Officer Wihongi violated his rights by unlawfully detaining him, using excessive force, and detaining him for an excessive amount of time.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion of summary judgment, the court views "all facts [and evidence] in the light most favorable to the party opposing summary judgment." *S.E.C. v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012) (quoting *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008)). The movant must prove that no genuine issue of material fact exists for trial. *See* Fed. R. Civ. P. 56(a); *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). Accordingly, to survive summary judgment, "the nonmoving party must come forward with specific facts showing there is a genuine issue for trial." *Smart*, 678 F.3d at 858 (quoting *L & M Enters. V. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)).

## DISCUSSION

Donahue claims that: 1) he was unlawfully detained by Officer Wihongi in violation of his Section 1983 rights; 2) Officer Wihongi used excessive force in handcuffing Donahue; and 3) Wihongi violated Donahue's rights by detaining him longer than necessary. Wihongi asserts a qualified immunity defense against the claims arguing that a reasonable officer could have believed that probable cause existed to arrest the plaintiff.

**1) Officer Wihongi Had Probable Cause to "Seize" Donahue**

Donahue claims that Officer Wihongi violated his Fourth Amendment right to be free from an alleged improper detention or arrest. An arrest is "characterized by a highly intrusive or lengthy search or detention. *See Oliverv v. Woods,* 209 F.3d 1179, 1186 (10th Cir. 2000). A warrantless arrest comports with the Fourth Amendment "when there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Oliver*, 209 F.3d at 1188. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id*. In a Section 1983 action, Wihongi is entitled to qualified immunity if he had probable cause to arrest Donahue. An arresting officer is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995).

Wihongi asserts that he had probable cause to detain or arrest Donahue based on public intoxication. Under Utah law, "[a] person is guilty of intoxication if the person is under the influence of alcohol… to a degree that the person may endanger the person or another, in a

5

public place… where the person unreasonably disturbs other persons." Utah Code Ann. § 76-9-701(1)(2014).

Utah Code section 77-7-15 provides that "[a] peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions." Utah Code Ann. § 77-7-15 (1980). Moreover, under Utah's failure to identify law, "[a] person is guilty of failure to disclose identity if during the time that the person is lawfully subjected to a stop as described in Section 77-7-15: (a) a peace officer demands that the person disclose the person's name; (b) the demand described in Subsection (1)(a) is reasonably related to the circumstances justifying the stop;… and (d) the person fails to disclose the person's name." Utah Code Ann. § 76-8-301.5(1)(2008). Finally, Utah law provides that "[a] peace officer may…, without warrant, arrest a person: (4) when the peace officer has reasonable cause to believe the person has committed the offense of failure to disclose identity under Section 76-8-301.5." Utah Code Ann. § 77-7-2 (2011).

Here, Officer Wihongi had a reasonable suspicion, though mistaken, that Donahue was publicly intoxicated. Officer Wihongi approached the woman who identified herself as Amy LaRose before speaking to Donahue and she informed him that Donahue had approached her and was visibly intoxicated. Amy told Officer Wihongi that Donahue called her a piece of shit and threatened her.

Based on these facts, Officer Wihongi had suspicion that Donahue was publicly intoxicated. Officer Wihongi therefore requested Donahue to provide his name pursuant to section 77-7-15. Donahue refused and admitted to consuming an unspecified amount of alcohol.[3]

---

[3] Officer Wihongi asked Donahue if he had anything to drink that night, to which Donahue replied "yes." Officer Wihongi never asked how much alcohol Donahue consumed, and Donahue never offered the information.

6

Donahue did not slur his words during the encounter or exhibit other signs of intoxication. Although it may have been prudent for Officer Wihongi to ask additional questions regarding Donahue's state of intoxication, Officer Wihongi was focused on obtaining a name before proceeding further with the investigation. Officer Wihongi was operating under a reasonable suspicion based on Amy's statements that Donahue was intoxicated, and Donahue was therefore obligated to provide his name. When Donahue refused to provide his name, he violated Utah's failure to identify law. Accordingly, the court finds that Officer Wihongi has reasonable suspicion that Donahue was publicly intoxicated, allowing Officer Wihongi to request Donahue's name, when Donahue refused to provide his name Officer Wihongi had probable cause to arrest Donahue for violating Utah's failure to identify law.

**2) Officer Wihongi Did Not Exercise Excessive Force in Arresting Donahue.**

Donahue claims that Officer Wihongi used excessive force in arresting him. To determine whether an officer's actions were objectively reasonable, a court must look to the particular facts and circumstances of the situation, including a consideration of the severity of the crime, the potential threat posed by the suspect, and the suspect's attempts to resist or evade arrest. *See Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007). As with any Fourth Amendment reasonableness analysis, the officer's actions are "assessed from the perspective of a reasonable officer on the scene, recognizing the fact that the officer may be forced to make split-second judgments' under stressful and dangerous conditions." *Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001). To amount to excessive force, the conduct at issue must be reckless, as opposed to merely negligent. Moreover, "[i]n cases in which handcuffing is permissible yet the manner of handcuffing may render the application force excessive, the Graham factors are less

helpful in evaluating the degree of force applied." *Koch v. City of Del*, 6660 F.3d 1228, 1247 (10th Cir. 2011).

Wihongi concedes that the alleged public intoxication violation and Utah's failure to identify law are misdemeanors. Thus, it was necessary for Wihongi to utilize minimal force to secure Donahue while applying the handcuffs. However, Wihongi asserts that this factor weighs in his favor because he did in fact use minimal force.

The court has viewed the video of the encounter, as well as the photographs of alleged bruising that Donahue submitted. Although the video shows Donahue pleading with Officer Wihongi not to hurt him, the video doesn't show Donahue being hurt. It appears that Donahue's statements come from a fear of being hurt, and not from being hurt. The handcuffing appears reasonable from the videotape. Further, the court is unable to see any bruising from the photographs that Donahue submitted. Accordingly, the court finds that no reasonable juror would be able to find that Officer Wihongi used excessive force in arresting Donahue.

### 3) Officer Wihongi Did Not Detain Donahue for a Prolonged Period of Time.

Based on the reasonable, though mistaken, suspicion that Donahue was publicly intoxicated, and then based on probable cause that Donahue violated Utah's failure to identify statute, Donahue was detained for approximately 22 minutes. Donahue argues that Officer Wihongi left Donahue in handcuffs longer than was necessary for purely punitive reasons because Officer Wihongi became aware at some point during the encounter that Amy's statements about Donahue being intoxicated were not reliable.

In *Panagoulakos v. Yazzie*, the 10th Circuit rejected a similar argument. 741 F.3d 1126 (10th Cir. 2013). In *Panagoulakos*, the plaintiff was arrested for violation of a protective order, because the arresting officer mistakenly believed that the protective order forbade the plaintiff

from carrying a firearm. Upon further review of the protective order, the arresting officer became and/or should have become aware that the protective order did not in fact prohibit plaintiff from carrying a firearm, thus the plaintiff had not committed the crime for which he was arrested. *Id*. The plaintiff sued, alleging that he was wrongfully arrested and detained. The district court granted the officer partial summary judgment noting that although the initial arrest was supported by probable cause, the officer should have released him once probable cause was vitiated. The defendants appealed to the Tenth Circuit, which noted that the plaintiff bore "the burden of showing that clearly established law imposed a duty on [the defendant officer] to release him. *Id*.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Clearly established" does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

In this case, the issue is whether there was clearly established law that an officer, with at least arguable reasonable suspicion of a person committing the crime of public intoxication, approaches that suspect and asks for his name, and that person refuses to provide his name in violation of Utah law giving rise to probable cause to arrest, violates an individuals clearly established rights by detaining the individual for 22 minutes while the officer investigates the situation. In this case, Officer Wihongi detained Donahue for a reasonable amount of time for him to investigate the situation. Donahue argues that the initial arrest was unconstitutional, therefore any length of detention is unconstitutional. As the court found above, the initial arrest was constitutional because Officer Wihongi had reasonable suspicion that Donahue was publicly

intoxicated, and then had probable cause to arrest Donahue when he failed to provide his name. The length of time of the detention was not excessive. Accordingly, Donahue's claim for continued detention fails.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED in its entirety. (Dkt. No. 26).

Dated this 20th day of December 2018.

BY THE COURT:

*[signature: Dale A. Kimball]*

DALE A. KIMBALL,
United States District Judge